IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JESSE WHITAKER, 28215-037 | * |
| v. | * CIVIL ACTION NO. WMN-09-1964 |
| UNITED STATES OF AMERICA<br>DEIRDRE MULL, NP<br>M.S. MOUBAREK, MD | *<br><br>* |
| | *** |

**MEMORANDUM**

Plaintiff, a Bureau of Prisons inmate confined at the Federal Correctional Institution ("FCI") – Beckley in Beaver, West Virginia, filed this Complaint pursuant to 28 U.S.C. §§ 1331 and 1346, raising a civil rights[1] and tort claims under the Federal Tort Claims Act ("FTCA"). Plaintiff alleges a one-year delay in receipt of pain medication and MRI testing for neck, arm, and shoulder pain while confined at the FCI in Cumberland, Maryland in 2006. Paper No. 1. He claims that he eventually received a diagnosis of cervical spondylosis and is seeking damages and miscellaneous relief for lost muscle mass and nerve damages which are a "direct result of having to wait for diagnosis and treatment…." *Id*.

Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Paper No. 22. Plaintiff filed Objections and Defendants filed a Reply. Paper Nos. 24-26. No hearing is deemed necessary and the case may be determined on the pleadings. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, Defendants' dispositive motion shall be granted.

---

[1] As a federal prisoner, Plaintiff asserts his civil rights claims pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

II. *Standard of Review*

   A. *Motion to Dismiss*

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964-65 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id.* at 557-558 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S.Ct. 1937, 1949 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The court, however, need not accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Moreover, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *Takacs v. Fiore*, 473 F.Supp.2d 647, 651 (D. Md. 2007).

   B. *Motion for Summary Judgment*

   Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

III. *Analysis*

Defendants seek dismissal of the *Bivens'* civil rights allegations on the ground of non-exhaustion under 42 U.S.C. § 1997e(a) and also assert that summary judgment is warranted on the FTCA claim because Plaintiff cannot prove his medical malpractice negligence claim by showing that the United States breached the applicable standard of care and that the alleged breach was the proximate cause of injury. They assert that Plaintiff received timely and appropriate treatment for his cervical nerve compression and complaints of arm and shoulder pain, despite his multiple episodes of non-compliance and/or refusal of treatment. Defendants further claim that given Plaintiff's self-reporting and clinical evidence, the treatment he received— cervical collar and traction-- was effective in improving his condition.

1. *Bivens* Complaint

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be

pleaded and proven by defendant(s). *See Jones v. Bock*, 549 U.S. 199, 212-217 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *See Chase v. Peay*, 286 F.Supp.2d 523, 530 (D.Md. 2003); *see also Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review). The BOP four step process for resolution of prisoner complaints can be used to resolve challenges to the receipt of health care. *See* 28 C.F.R. § 542.10 and § 542.12.

Defendants affirm—through the submission of declaration and Plaintiff's records-- that he was confined at FCI-Cumberland from November 7, 2005 to May 1, 2007. They assert that Plaintiff submitted a total of fifteen administrative remedies from January 12, 1996 to August 18, 2008 and he did not exhaust any of the administrative remedies that he filed. Defendants note that only one of the fifteen remedies was filed while Plaintiff was housed at FCI-Cumberland. In that remedy, dated October 5, 2006, Plaintiff sought an MRI to determine the extent of an alleged back injury. The administrative remedy clerk at FCI-Cumberland rejected Plaintiff's request because he had not first attempted informal resolution as required by the Administrative Remedy process. The clerk instructed Plaintiff to resubmit his request within five days, but Plaintiff did not do so.

Defendants state that Plaintiff has conceded his failure to exhaust his administrative remedies. *See* Paper Nos. 10 & 18. Plaintiff does not refute this claim, but appears to raise a

5

futility argument. The Court finds this argument unpersuasive. The requirement for exhaustion of administrative remedies can be either statutorily or judicially imposed. Statutory exhaustion requirements are mandatory, while the judicial, or common-law, exhaustion doctrine is discretionary and includes a number of exceptions. *See Beharry v. Ashcroft*, 329 F.3d 51, 56-57 (2[d] Cir. 2003). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court expressly found that Congress had statutorily mandated exhaustion under 42 U.S.C. § 1997e(a) and "we will not read futility or other exceptions into statutory exhaustion requirements...." *Id*. at 741. Therefore, the civil rights claim regarding Plaintiff's medical care shall be dismissed for non-exhaustion as to Defendants Mull and Moubarek.

    2.    FTCA claims

Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." 28 U.S.C. § 1346(b) (1994). As a waiver of sovereign immunity, the FTCA is to be narrowly construed. *See United States v. Nordic Village, Inc*., 503 U. S. 30, 34 (1992). Immunity is not waived for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(d).

The requirement that a Plaintiff asserting a claim under the Federal Tort Claims Act suffer an injury as a result of the alleged negligence is plainly stated in the statutory language. Under the FTCA, the defendant's liability for negligence is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b). *See Molzof v. United States*, 502 U.S.

301, 305 (1992); *Mortise v. United States*, 102 F.3d 693, 696 (2$^d$ Cir. 1996) ("The liability of the federal government under the FTCA is generally determined by state law."). Under Maryland law, to prevail in an action for negligence a plaintiff must establish all of the elements of negligence. *Valentine v. On Target, Inc.*,353 Md. 544, 548, 727 A. 2d 947, 949 (1999). Also, under Maryland law "[t]he basic elements of a negligence claim are: (1) a duty or obligation under which the defendant is to protect the plaintiff from injury; (2) breach of that duty; and (3) actual loss or injury to the plaintiff proximately resulting from the breach." *Beckwith v. Hart*, 263 F.Supp.2d 1018, 1022 (D. Md. 2003).

In the instant case, the parties do not dispute that Plaintiff was owed a duty of reasonable care. The issues to be resolved are whether BOP healthcare staff breached that duty and, if so, whether Plaintiff suffered an injury that was proximately caused by the breach. The medical record evinces that the duty of care was not breached.

According to the materials presented to the Court on December 2, 2005, Plaintiff reported to FCI-Cumberland health services complaining of shoulder and neck pain which he claimed had lasted approximately one week. He was examined by Nurse Practitioner ("N.P.") Mull, who found normal vital signs, well developed muscles, with zero muscles wasting, a full-range of motion ("ROM") of Plaintiff's head and shoulders, and tenderness to his left shoulder but no swelling. She suggested that the source of his pain was likely musculoskeletal in nature. The standard conservative course of treatment of pain-relieving cream, Naproxen pain medication, and exercises to strengthen shoulder and arms was prescribed. Plaintiff was advised to return to the medical department as needed.

Six months later, on June 28, 2006, Plaintiff returned to health services complaining of shoulder and arm pain. He reported that he did not have any weakness to his arms and denied a

7

history of trauma. N.P. Mull examined Plaintiff and noted that his left shoulder did not appear to have any deformity and that he had a full ROM. She assessed the condition as possible nerve impingement and prescribed Tylenol to be taken as needed for seven days to control any pain and advised Plaintiff to avoid overhead lifting, pull-ups and push-ups. He was further advised to take over-the-counter ("OTC") pain medication as needed after the Tylenol ran out.

On August 4, 2006, Plaintiff returned to health services for a follow-up regarding his left arm. He was again examined by Mull, who instructed him to take OTC medication as needed and ordered x-rays of Plaintiff's spine and left shoulder. A follow-up was scheduled with the clinical director for two to three weeks. The x-rays revealed no abnormalities to the left shoulder and C3-4 spondylosis of the cervical spine. On August 25, 2006, Plaintiff was seen by health care staff and denied any worsening of pain. His appointment was rescheduled so that he could be examined by the clinical director. On September 14, 2006, Plaintiff was examined by Dr. Moubarek and Mull for complaints of left arm weakness and left shoulder and neck pain. A cervical collar was provided to alleviate Plaintiff's symptoms, as some sort of cervical spine issue was suspected. A follow-up appointment was scheduled for three weeks to see if the neck brace improved his condition.

Plaintiff was re-evaluated on September 27, 2006, for complaints of continued pain and discomfort. There was no indication that the neck collar was providing relief. A consult for an MRI was completed. The MRI was scheduled and completed on October 17, 2006, and Plaintiff was informed of the results three days later. The MRI showed some nerve compression in the cervical spine. He was instructed to continue to wear the cervical collar and a follow-up appointment was scheduled for November 2, 2006. Due to continued complaints and the results of the MRI, a consult to a neurosurgeon was submitted and Plaintiff was provided another prescription

of Naproxen for pain relief. Plaintiff was evaluated by a neurosurgeon on November 20, 2006. The neurosurgeon recommended cervical neck traction, three times a day, and the continued use of the cervical collar. The cervical neck traction was initiated on December 18, 2006, as recommended.

On December 22, 2006, it was noted that Plaintiff reported no improvement or worsening in his symptoms or discomfort. The traction treatment nonetheless continued and on January 1, 2007, Plaintiff reported no improvement. Four more weeks of cervical traction and continued use of cervical collar were ordered. Defendants state, however, that Plaintiff refused to continue with the course of treatment from January 7 to January 17, 2007, refused to continue with the treatment on January 25, 2007, and returned his cervical collar on January 24, 2007. On February 2, 2007, a meeting was arranged with Plaintiff to discuss his refusal of the cervical treatment. As a result, Plaintiff agreed to restart the care. A new cervical collar was issued and Plaintiff was instructed that he would need to start from the beginning with six weeks of cervical traction, due to his refusals and break in treatment. Cervical traction began again on February 8, 2007, and according to Defendants, other than several days when Plaintiff failed to show for his scheduled traction, continued until he was locked up on the Special Housing Unit ("SHU") on February 27, 2007.

On February 16, 2007, Plaintiff reported that the cervical traction had greatly improved his function and reduced his pain level. On February 27, 2007, Plaintiff refused to receive his traction while he was being housed in the SHU. On March 1, 2007, Plaintiff was again spoken to about his refusal of treatment. He still refused to have the traction and reported that as he felt much better and did not need the traction. On March 6, 2007, Plaintiff was released from SHU and requested to resume the neck traction. The treatment started the next day, three times a day and aside from a few days when Plaintiff did not show for traction, continued until he completed a total of six weeks on

9

March 29, 2007.[2] On March 20, 2007, Plaintiff reported that he had decreased neck pain. He requested that the traction weight be increased. On March 29, 2007, Plaintiff reported that his strength and pain was much improved and he was exercising his left arm well and his muscle tone was returning. The cervical collar was continued for two months and Plaintiff was instructed to gradually decrease the time wearing the collar unless any signs or symptoms developed.

Defendants state that there were no other complaints by Plaintiff from March 29, 2007 until he was transferred out of FCI-Cumberland on May 1, 2007. Indeed, when subject to intake screening at the U.S. Medical Center in Springfield, Missouri on May 2, 2007, Plaintiff reported that since being diagnosed and treated for spondylosis at FCI-Cumberland he felt much better, denied any further discomfort and reported a pain level of 0 in a scale of 0-10.

The medical records reveal that medical staff did not breach their duty of care. Plaintiff was initially seen in the health department at FCI-Cumberland for his complaints of shoulder and neck pain and treated with pain-relief cream, pain medication and advised on exercises to strengthen his shoulder and arms. Six months later he returned due to his sick-call request which indicated that the shoulder and neck pain had only existed for six days. The objective examination indicated no deformity and full ROM. Tylenol was prescribed and Plaintiff was advised to avoid exercises that would over extend and compromise his shoulder and arm.

Follow-up care in the form of x-rays, cervical collars, MRI, examination by a neurosurgeon, pain medication and treatment with cervical traction ensued over the remaining time Plaintiff was

---

[2] It is Plaintiff's contention that he did not miss traction treatments due to his refusal. Rather, he states that because the traction was provided in the same area as suicide prevention watch, staff cancelled and rescheduled the care when an inmate was on suicide watch. Defendants dispute this affirmation, stating that Plaintiff's repeated refusals to undergo cervical traction were made by him and him alone and he only restarted the treatment after medical staff advised him against refusing to undergo the care.

housed at FCI-Cumberland.  According to the record, which includes Plaintiff's subjective statements, the treatment regimen and plan was successful.

Under Maryland law, "there is a presumption that the doctor has performed his medical duties with the requisite care and skill." *Hebert v. United States,* 2009 WL 3681677, at *11 (D. Md. 2007).  The burden of proof is on Plaintiff to show both a lack of the requisite skill or care on the part of the doctor and that such want of skill or care was the direct cause of the injury.  *See Lawson v. United States*, 454 F.Supp.2d 373, 416 (D. Md. 2006).  Plaintiff has failed to refute the record to show that his health care needs were not properly and successfully addressed and that medical staff breached their duty of care.

IV.  *Conclusion*

For the foregoing reasons, Defendants' Motion for Summary Judgment shall be granted.  Judgment shall be entered in favor of Defendants and against Plaintiff.


Date  July 19, 2010                                         /s/
                                              William M. Nickerson
                                              Senior United States District Judge